UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x
ANGEL ALGARIN

                Petitioner,

      -against-

DENNIS BRESLIN, Superintendant, Arthur Kill
Correctional Facility,

                Respondent.
-------------------------------------------------------------------x

**MEMORANDUM and ORDER**

06-CV-3175 (SLT)

FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.
★ FEB 04 2010
P.M.
TIME A.M. ____

**TOWNES, United States District Judge:**

*Pro se* petitioner Angel Algarin ("Petitioner") seeks a writ of *habeas corpus* pursuant to 28 U.S.C. § 2254. He challenges his Queens County convictions for robbery in the first degree, criminal possession of stolen property in the fifth degree, criminal possession of a weapon in the third degree, and criminal possession of stolen property in the fourth degree. Pet. ¶ 5.

Petitioner alleges that his due process rights were violated by improper comments made by the prosecutor during summation. Petitioner contends that those comments included vouching for the strength of the prosecution case and shifting the burden of proof to the petitioner, denigrating the petitioner personally, and criticizing defense counsel's summation and cross-examination. Petitioner also alleges that his Sixth Amendment rights were violated when the prosecutor used a co-defendant's statement to form a good-faith basis for part of Petitioner's cross-examination.

For the reasons set forth below, the petition in denied.

## BACKGROUND

On the night of August 1, 2000, at around 10:30 p.m., Sheyla Figueroa left a friend's house and took the bus to Eldert Lane and 75th Street in Queens, New York. At around 12:30



1

a.m., she was walking to the home of another friend when a car approached and pulled up alongside her. A man, later identified as Petitioner, exited the vehicle. He pointed a small, silver .22-caliber handgun at Figueroa's left cheek and demanded her money and jewelry. Trial Tr. 251: 8-19; 252: 12-25. Petitioner stole Figueroa's earrings, bracelet, and a handbag containing her personal documents. *Id.* at 252: 16-19. Figueroa then watched as Petitioner returned to the car, which sped off.

By 4:00 a.m that morning, Petitioner was in a van with co-defendant Gilbert Nevarro speeding through Queens when they turned the wrong way down a one way street. *Id.* at 298: 23-24. Police detectives had been following the van in an unmarked car for 20 blocks at that point, and having radioed ahead to other units, turned on their lights to stop the van as it slowed down near Rockaway Boulevard. *Id.* at 299: 13-22; 300: 15-20. An officer approached the car whereupon he saw Petitioner in the passenger seat and a loaded .22-caliber silver handgun laying on the backseat. *Id.* at 301: 11-17; 303: 11-20. Petitioner and the driver, Nevarro, were removed from the vehicle and handcuffed. Officers then found Figueroa's jewelry and personal documents in Petitioner's pockets. *Id.* at 304-05: 8-15.

On the evidence and witness accounts including Petitioner's testimony, the jury convicted him of robbery in the first degree (two counts), robbery in the second degree, criminal possession of a weapon in the second degree, criminal possession of a weapon in the third degree, and criminal possession of stolen property in the fourth and fifth degrees. Petitioner was sentenced to concurrent prison terms of twelve years for the first degree robbery counts, nine years each for robbery in the second degree and second degree possession of a weapon, five years for third degree possession of a weapon, three years for fourth degree possession of stolen property and one year for fifth degree possession of stolen property. On appeal, the New York Appellate

Division affirmed the conviction on February 7, 2005, *People v. Algarin*, 790 N.Y.S.2d 746

(N.Y. App. Div. 2005), and the New York Court of Appeals denied Petitioner leave to appeal on

March 29, 2005, *People v. Algarin*, 4 N.Y.3d 827 (N.Y. 2005). Petitioner timely filed this

petition for habeas corpus.

## DISCUSSION

### I.       Legal Standards

#### A.      Standard of Review

A federal court may "entertain an application for a writ of habeas corpus" on behalf of an

individual in state custody pursuant to the judgment of a state court "only on the ground that he

is in custody in violation of the Constitution or laws . . . of the United States." 28 U.S.C. §

2254(a) (1996); *see also Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("In conducting habeas

review, a federal court is limited to deciding whether a conviction violated the Constitution,

laws, or treaties of the United States."). Under the Antiterrorism and Effective Death Penalty

Act of 1996 ("AEDPA"), courts will only grant a habeas petition based on a claim that is

"adjudicated on the merits" in state court and the state court's adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable
> application of, clearly established Federal law, as determined by the Supreme
> Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the
> facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). An "adjudication on the merits" is a substantive, rather than a procedural,

resolution of a federal claim. *See Sellan v. Kuhlman*, 261 F.3d 303, 313 (2d Cir. 2001) (citations

omitted). A state court has adjudicated a state petitioner's claim on the merits when it "(1)

disposes of the claim on the merits, and (2) reduces its disposition to judgment." *Bell v. Miller*,

500 F.3d 149, 155 (2d Cir. 2007) (quoting *Sellan*, 261 F.3d 303 at 312).

## B.    Procedural Default

Before reaching the merits of a habeas claim, a federal habeas court lacks jurisdiction to evaluate questions of federal law decided by a state court where the state court judgment "rests on a state law ground that is independent of the federal question and adequate to support the judgment," unless the petitioner "can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 729, 760 (1991); *Acosta v. Artuz*, 575 F.3d 177, 184 (2d Cir. 2009).[1] This "independent and adequate state ground" doctrine is designed to "ensur[e] that the States' interest in correcting their own mistakes is respected in all federal habeas cases." *Coleman*, 501 U.S. at 732. Thus, when a petitioner fails to properly raise his federal claims in state court, he deprives the state of "an opportunity to address those claims in the first instance" and frustrates the State's ability to honor his constitutional rights. *Id.* at 732, 748.

Consequently, when a petitioner fails to raise his federal claims in compliance with relevant state procedural rules, the state court's refusal to adjudicate the claim based on procedural default ordinarily qualifies as an independent and adequate state ground for denying federal review. *Acosta*, 575 F.3d at 184. Procedural default precludes habeas review when "the last state court rendering a judgment in the case clearly and expressly states that its judgment rests on a state procedural bar." *Green v. Travis*, 414 F.3d 288, 294 (2d Cir. 2005) (quoting

---

[1] A petitioner can establish a "fundamental miscarriage of justice" through "new reliable evidence-whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence-that was not presented at trial." *Schlup v. Delo*, 513 U.S. 298, 324-27, (1995). The petitioner must show that "it is more likely than not that no reasonable juror would have convicted him in light of the new evidence." *Schlup*, 513 U.S. at 327. Nevertheless, the Supreme Court has emphasized that this exception must be "'rare' and be applied only in the 'extraordinary case.'" *Id.* at 299.

*Glenn v. Bartlett*, 98 F.3d 721, 724 (2d Cir. 1996)). Specifically, a state appellate court decision holding that an issue raised on appeal was not adequately preserved at trial may potentially bar federal habeas review. *Reyes v. Cunningham*, No. 07-CV-1044, 2009 WL 1146432, at \*16 (S.D.N.Y. Apr. 28, 2009). Moreover, "federal habeas review is foreclosed when a state court has expressly relied on a procedural default as an independent and adequate state ground, even where the state court has also ruled in the alternative on the merits of the federal claim." *Id.* (quoting *Glenn*, 98 F.3d at 724). Thus, even when a state court states that a claim is "not preserved for appellate review" but then rules "in any event" on the merits, such a claim is procedurally defaulted. *Id.* (quoting *Glenn*, 98 F.3d at 725).

Nevertheless, before a state procedural bar may effectively bar federal habeas jurisdiction, courts must be satisfied that the specific procedural ground is "adequate to support the judgment." *See Monroe v. Kuhlman*, 433 F.3d 236, 240-41 (2d Cir. 2006); *see also Cotto v. Herbert*, 331 F.3d 217, 239 (2d Cir. 2003) ("[T]he question of when and how defaults in compliance with state procedural rules can preclude . . . consideration of a federal question is itself a federal question.") (internal quotation marks omitted). To satisfy this inquiry, federal habeas courts look to whether "the state rule at issue . . . is firmly established and regularly followed." *Clark v. Perez*, 510 F.3d 382, 391 (2d Cir. 2008) (quoting *Garvey v. Duncan*, 485 F.3d 709, 714 (2d Cir. 2007)). The inquiry focuses on "guideposts" found in *Cotto* measuring "the state interest in a procedural rule against the circumstances of a particular case," including: (1) whether the alleged procedural violation was actually relied on in the trial court, and whether perfect compliance with the state rule would have changed the trial court's decision; (2) whether state caselaw indicated that compliance with the rule was demanded in the specific circumstances presented; and (3) whether petitioner had "substantially complied" with the rule

given "the realities of trial," and, therefore, whether demanding perfect compliance with the rule would serve a legitimate governmental interest. *Clark*, 510 F.3d at 391 (citing *Cotto*, 331 F.3d at 240).

## II.    Prosecutor's Summation Comments

Petitioner contends that prosecutorial misconduct tainted his trial by depriving him of Due Process under the Fourteenth Amendment. Petitioner points to four specific comments made by the prosecutor during summation: (1) that "[t]he prosecutor argued that the defense failed to inquire in to the time-frame of the crime;" (2) that the prosecutor "criticized [defense] counsel for suggesting that the complainant was influenced by police;" (3) that the prosecutor "implore[d] the jury to accept the evidence 'unless [defense counsel] can make all this evidence disappear;'" (4) that the prosecutor "denigrated petitioner, personally, calling his testimony 'preposterous' and claiming that petitioner 'admitted what he could not deny' and 'denied everything else.'" Pet. Add. for Writ at 1. At trial, Petitioner's defense counsel objected to the first three comments of the prosecutor and the trial judge sustained all but one of them. *See* Trial Tr. 463: 11-12, 465: 5-10, 471: 16-19. Nevertheless, Petitioner's counsel did not follow up on the general objection with any request for a curative instruction or mistrial. With respect to the last category of the prosecutor's comments, Petitioner did not object at all.

### A.    Procedural Bar

Petitioner presented this claim to the Appellate Division, which held that his contention that the prosecutor's improper summation comments require reversal is "largely unpreserved for appellate review" and that, in any event, "the errors were harmless in light of the overwhelming evidence of the defendant's guilt." *Algarin*, 790 N.Y.S.2d at 476. The Appellate Division cited New York's contemporaneous objection rule, *see* N.Y. Crim. Proc. L. § 470.05(2), as the basis

6

for Petitioner's default. *Id.* Under the contemporaneous objection rule, to perfect a proper

appeal on a question of law, the party challenging a trial court ruling must register a protest "at

the time of such ruling . . . or at any subsequent time when the court had an opportunity of

effectively changing the same." N.Y. Crim. Proc. L. § 470.05(2); *see also People v. Lopez*, 71

N.Y.2d 662, 665 (N.Y. 1988) ("In order for there to be a question of law reviewable by

[appellate courts], the trial court generally must have been given an opportunity to correct any

error in the proceedings below at a time when the issue can be dealt with most effectively.").

Particularly, the contemporaneous objection rule is consistently and regularly followed

for objections to a prosecutor's summation. *See, e.g., People v. Davis*, 716 N.Y.S.2d 60, 60

(N.Y. App. Div. 2000) ("The defendant's contention that certain statements made by the

prosecutor on summation constituted reversible error is largely unpreserved for appellate review

since he failed to object or did not object with sufficient specificity, failed to ask for curative

instructions, or failed to request a mistrial when they were made."). The Second Circuit has

specifically held that the failure to object to the prosecutor's remarks in summation is an

independent and adequate state ground precluding habeas relief. *Greene v. Brown*, No. 06 Civ.

5532, 2007 WL 1589449, at *23 (S.D.N.Y. June 4, 2007) (citing *Vargas v. Keene*, 86 F.3d 1273,

1280 (2d Cir. 1996)). Furthermore, even if an objection is made to a prosecutor's comment

during summation, "[i]n order to properly preserve the sustained objections as claims for

appellate review, [defense] counsel was required under New York law to 'request [] further relief

from the trial court.'" *Id.* (quoting *Madore v. Beaver*, 368 F. Supp. 2d 219, 223 (W.D.N.Y.

2005)). Under this rule, the defendant must request further relief such as curative instructions or

a motion for a mistrial. *Id.* (citing *People v. Morel*, 747 N.Y.S.2d 553 (N.Y. App. Div. 2002)).

Finally, Petitioner's counsel failed to substantially comply with the contemporaneous objection rule by requesting a mistrial or curative instructions nor has Petitioner established cause, actual prejudice, or a fundamental miscarriage of justice. Accordingly, the Appellate Division's finding that this claim is procedurally barred provides an independent and adequate ground to support the state court's judgment and precludes habeas review.

**B.     Merits**

Even if the Court were to reach the merits of Petitioner's claim, it would be unavailing. The Second Circuit has developed an exacting standard for overturning a conviction based on a prosecutor's summation:

> A criminal conviction is not to be lightly overturned on the basis of a prosecutor's comments standing alone in an otherwise fair proceeding. In order to reach the level of a constitutional violation, a prosecutor's remarks must "so infect[ ] the trial with unfairness as to make the resulting conviction a denial of due process. Prosecutorial misconduct during summation is grounds for reversal only when the remarks caused "substantial prejudice" to the defendant.

*Gonzalez v. Sullivan*, 934 F.2d 419, 424 (2d Cir.1991) (internal citations and quotations omitted). The prosecutor's comments, when viewed in the context of the entire summation and the other evidence at trial, would not serve as grounds for reversal.

Here, the comments raised by Petitioner can be construed as bolstering a witness, disparaging Petitioner and Petitioner's defense counsel, and attempting to shift the burden to the defense at trial. Some of the comments were acceptable responses to defense counsel's questioning of the government's case and witnesses. *See, e.g., Ayala v. Ercole*, 2007 WL 1135560, at *17 (E.D.N.Y. Apr.17, 2007) ("[A] prosecutor is permitted to respond in an appropriate manner to attacks on the government's case by defense counsel during his summation, including attacks on the credibility of government witnesses.") (collecting cases); *Everett v. Fischer*, 2002 WL 1447487, at *3 (E.D.N.Y. July 3, 2002) (prosecutor's comments as

to the credibility of government witnesses a "fair response" to defense counsel's attack on the credibility of those witnesses); *see also Shariff v. Artuz*, 2001 WL 135763, at *8 (S.D.N.Y. Feb.16, 2001) ("Although the government may not vouch for a witness's credibility, it may respond to an argument that impugns the government's integrity or the integrity of the case.").

To the extent that any of the prosecutor's remarks in this case were improper, the trial court's instructions to the jury were adequate to temper any error. The trial judge clearly instructed the jury that "[t]hroughout this proceeding, the defendant is presumed to be innocent," that "the people must 'prove, beyond a reasonable doubt, every element of the crime, including that the defendant is the person who committed that crime,'" and that "even though the defendant introduced evidence, the burden of proof remains on the People." Trial Tr. at 503: 6 – 504: 14. The trial court further elaborated that "[t]he defendant is not required to prove that he's not guilty." *Id.* at 503:24-25. Instructions of this nature have been held to cure possible prejudice to a defendant. *See U.S. v. Rivera*, 971 F.2d 876, 884 (2d Cir. 1992) (no prejudice where trial judge gave instruction that government always has the burden of proof which "never shifts," despite prosecutor's implication that defense counsel, during cross-examination of a police officer, should have elicited certain testimony supporting defendant's claim).

Finally, if the prosecutor's comments amounted to error, such error was harmless considering the strength of the prosecution's case. Figueroa, the principal witness, had an ample opportunity to see Petitioner while she was being robbed. She subsequently identified Petitioner at a line-up and in court. Petitioner was found less than four hours after the robbery with Figueroa's jewelry, including a bracelet with her name on it, and government identification. Figueroa also identified the gun that was held to her cheek, which was found in the backseat of the vehicle from which Petitioner was removed and apprehended. Under such circumstances,

10

any errors in the prosecutor's summation would not have caused "substantial prejudice" to Petitioner. *See, e.g., United States v. Modica,* 663 F.2d 1173, 1182 (2d Cir. 1981) (finding no substantial prejudice even though prosecutor made improper comments and trial court failed to cure the errors where the "trial record strongly indicates that the jury would have convicted [defendant] even if the improper statements had not been made").

## III.     Confrontation Clause Claim

Petitioner argues that he was denied his constitutional right to confront a witness against him. During trial, the prosecutor, using statements obtained from a co-defendant who had pleaded guilty as a basis for questioning, sought to elicit testimony from Petitioner. Petitioner contends that the use of the co-defendant's statement triggered the Confrontation Clause of the Sixth Amendment of the Constitution. Petitioner submitted this claim to the Appellate Division, which ruled that it was without merit as no statement made by the co-defendant was ever admitted into evidence. *Algarin,* 790 N.YS.2d.

In relevant part, the colloquy proceeded as follows:

Q. Mr. Algarin, isn't [it] a fact that you went to Gilbert Nevarro's house in the afternoon and you said to him, let's go catch - -

[DEFENSE]: Objection, Judge.

THE COURT: Step up, please.

[Sidebar]

[PROSECUTOR]: The co-defendant made a statement where he says . . . that the defendant approached him, said, . . . let's go catch a vic.

THE COURT: Catch a Vic?

[PROSECUTOR]: A Vic means victim.
***
[DEFENSE]: I'm going to object now because she's going to get the co-defendant's statement in.

11

THE COURT: She's not mentioning that . . . Gilbert Nevarro . . . sa[id], let's go get a vic or words to that effect? She's not talking about any statement. She's telling me to demonstrate her good faith basis for asking those questions so she could ask the questions and he can say I don't know, as the case may be.

[DEFENSE]: Okay.

THE COURT: And if he says no, that's the end of that and if he says yes, that's the end of that too.

(the following was held in open court)

Q. Mr. Algarin, isn't it a fact that you went to Gilbert Nevarro's house on August 1 in the evening and you said to him and you said, let's go catch a vic tonight?

A. I never knew or know where Gilbert Nevarro lives at.

\*\*\*

Q. Isn't it a fact that you went to Gilbert Nevarro's girl friend's house and said to him, let's go catch a vic?

A. No. No.

\*\*\*

Q. Isn't it a fact that when you first went to him you said to him let's go rob a vic and he said no, and then you went back at him later?

A. No.

Trial Tr. 430: 16 – 433: 25.

The Court agrees with the Appellate Division that the use of the co-defendant's statement falls outside the scope of the Confrontation Clause. In *Crawford v. Washington*, 541 U.S. 36, 53-54 (2004), the Supreme Court held that the Sixth Amendment prohibits "admission of testimonial statements of a witness who did not appear at trial unless he was unavailable to testify, and the defendant had a prior opportunity for cross-examination." *Crawford* reiterated that the Confrontation Clause "does not bar the use of testimonial statements for purposes other

than establishing the truth of the matter asserted." *Id.* at 59-60 n.9 (citing *Tennessee v. Street*, 471 U.S. 409, 414 (1985)). *cf. United States v. Paulino*, 445 F.3d 211, 216 (2d Cir. 2006) ("It has long been the rule that '[s]o long as . . . statements are not presented for the truth of the matter asserted, but only to establish a context . . .', the defendant's Sixth Amendment rights are not transgressed.' Nothing in *Crawford v. Washington* is to the contrary." (citation omitted and alterations in original)). Thus, the protections of the Confrontation Clause only extend to statements *admitted* into evidence for the truth of the matter asserted.

In this case, the co-defendant's statement was not admitted into evidence, nor did the prosecutor seek to enter the statement into evidence. The prosecutor merely used the co-defendant's statement to establish a good-faith basis for her cross-examination of Petitioner, without ever informing the jury, or even implying, that co-defendant had made a statement or that her questions were based on a statement made by co-defendant. Moreover, when Petitioner responded, "No" to each of the prosecutor's questions, the prosecutor complied with the court's ruling that she was bound by Petitioner's answers, and she made no attempt to introduce co-defendant's statement into evidence. As the court instructed the jury, "[q]uestions, in and of themselves, are not evidence. Therefore, you cannot infer any fact from the mere asking of a question." Trial Tr. 225: 24 – 226: 2. Thus, the Appellate Division's holding was not "contrary to, or involved an unreasonable application of" of federal law. 28 U.S.C. § 2254(d). *See United States v. Tucker*, 533 F.3d 711, 715 (8th Cir. 2008) (holding that the use of an out-of-court testimonial statement merely as the good-faith factual basis for relevant cross examination of the defendant at trial does not implicate the Confrontation Clause).

**CONCLUSION**

13

For the reasons stated above, the instant petition for a writ of habeas corpus pursuant to

28 U.S.C. § 2254 is denied, and this action is dismissed.

**SO ORDERED.**

SANDRA L. TOWNES
United States District Judge

Dated: Brooklyn, New York
       January 29, 2010